UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X   For Online Publication Only
SHURIZ HISHMEH, M.D., PLLC,

                                     Plaintiff,

                    -against-

EMPIRE HEALTH CHOICE ASSURANCE, INC.
d/b/a EMPIRE BLUE CROSS BLUE SHIELD,

                                  Defendant.
----------------------------------------------------------------------X

**ORDER**
19-CV-03144 (JMA) (ARL)

FILED
CLERK
4:41 pm, Aug 03, 2020
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**APPEARANCES:**

Michael G. Levin
Levin & Chetkof, LLP
265 Post Avenue
Suite 290
Westbury, NY 11590
    *Attorney for Plaintiff Shuriz Hishmeh, M.D., PLLC*

Stephen J. Steinlight
Troutman Pepper Hamilton Sanders LLP
875 Third Avenue
New York, NY 10022
    *Attorney for Defendant Empire Health Choice Assurance, Inc.
    d/b/a Empire Blue Cross Blue Shield*

**AZRACK, United States District Judge:**

## I. BACKGROUND

On September 18, 2017, plaintiff Shuriz Hishmeh, M.D., PLLC ("Plaintiff"), an orthopedic surgeon, performed a lumbar laminectomy and decompression at multiple levels of the lumbar spine on a non-party patient ("Patient"). (Pl.'s Opp. to Def.'s Mot. to Dismiss, ("Pl.'s Opp."), ECF No. 13 at 2.) At the time of the procedure, Patient maintained a health insurance policy with defendant Empire Health Choice Assurance, Inc. d/b/a/ Empire Blue Cross Blue Shield ("Defendant"). (Compl. at 2.) Defendant serves as the "Plan Sponsor" and "Plan Administrator" of Patient's specific plan (the "Plan"). (Id.) Patient's policy was part of an employee benefits plan

1

subject to the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 ("ERISA").[1] (Id. at 3.) Plaintiff is considered an "out of network" provider as set forth in Defendant's insurance policies. (Id. at 4.) On October 30, 2017, Defendant reimbursed Plaintiff $972.33 for Patient's operation, even though Plaintiff charges a usual and customary rate of $78,700.00 for the procedure. (Id.) Plaintiff's reimbursement is the subject of this litigation.

On April 8, 2019, Plaintiff commenced this action in Nassau County Supreme Court to recover $77,727.67, the difference between Defendant's payment and the cost of the services he rendered. (Id. at 5.) Plaintiff's complaint asserts three causes of action predicated on ERISA: (1) Defendant failed to fully pay Plaintiff's invoices; (2) Defendant breached the Plan by denying payment to Plaintiff at his usual and customary rate; and (3) Defendant was unjustly enriched.[2] (Id.) Defendant timely removed the action to this Court on May 28, 2019. (Id. at 3.) Following a pre-motion conference, Defendant filed a motion to dismiss, (Def.'s Mot. to Dismiss, ECF No. 12-1), which Plaintiff opposed, (Pl.'s Opp., ECF No. 13). Because Plaintiff lacks standing to bring his claims, the Court GRANTS Defendant's motion to dismiss.

## II. DISCUSSION

### A. Standard

Defendant moves to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[3]

---

[1] The Complaint contains conflicting statements as to whether Plaintiff's claims are subject to ERISA. (Def.'s Mot. to Dismiss, ECF No. 12-1 at 3.) However, Plaintiff clarified in his July 8, 2019 pre-motion conference letter, (ECF No. 8 at 2), and again during the September 19, 2019 pre-motion conference, (ECF No. 9), that all claims are subject to ERISA.

[2] By agreement of the parties, Plaintiff dropped his unjust enrichment claim. (ECF No. 8 at 3.)

[3] Originally, Defendant moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). In reply, Defendant clarified that it was moving to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) based on Plaintiff's arguments regarding standing in his brief in opposition. (Def's Reply, ECF No. 14 at 1.)

1. **Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a claim when there is a "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it,' such as when . . . the plaintiff lacks constitutional standing to bring the action." Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.À.R.L., 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). In reviewing a motion to dismiss under this Rule, the Court accepts all factual allegations in the complaint as true. Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). In resolving a jurisdictional issue, the Court may consider other materials beyond the pleadings but may not rely on mere conclusions or hearsay statements contained therein. J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004).

2. **Rule 12(b)(6)**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. Twombly, 550 U.S. at 555. In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).

3

**B. Plaintiff Lacks Standing to Pursue His Claims**

    **1. Standing Under ERISA**

Plaintiffs who sue under ERISA "must establish both statutory standing and constitutional standing" to pursue their claims. Kendall v. Emps. Ret. Plan of Avon Prods., 561 F.3d 112, 118 (2d Cir. 2009). Sections 502(a)(1)(B) and 502(a)(3) of ERISA limit those "who can sue to recover benefits due, enforce rights, or clarify rights to future benefits to those individuals who are 'participants' or 'beneficiaries' of a benefits plan." Merrick v. UnitedHealth Grp. Inc., 175 F. Supp. 3d 110, 115 (S.D.N.Y. 2016). ERISA defines a "participant" as "any employee or former employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan," while a "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(7)–(8). Case law is clear that "[o]nly the parties enumerated in Section 502 may sue directly for relief." Merrick, 175 F. Supp. 3d at 110. Here, it is undisputed that Plaintiff does not satisfy the statutory definition of a "participant" or "beneficiary." Accordingly, for Plaintiff to have standing to bring his claims, Patient must have assigned her claims to him.

    **2. Assignment**

Plaintiff alleges that he received a valid assignment of Patient's claims. The general rule that standing under ERISA is conferred only to beneficiaries and participants contains a "narrow exception . . . that confers standing to healthcare providers to whom a beneficiary has assigned his/her claims in exchange for healthcare benefits." Simon v. Gen. Elec. Co., 263 F.3d 176, 178 (2d Cir. 2001). In the complaint, Plaintiff alleges that Patient "assigned all of his/her rights and benefits of his/her insurance policy with defendants to plaintiff." (Compl. at 3.) However, "simply asserting that claims under ERISA [. . .] have been assigned by the patients to [Plaintiff] is

4

insufficient by itself to give [Plaintiff] a cause of action under the statute." Am. Psychiatric Ass'n v. Anthem Health Plans, Inc., 821 F.3d 352, 361 (2d Cir. 2016).

Attached to his opposition brief, Plaintiff submits a "General Consent to Treatment, Release of Information and Patient's Assignment and Guarantee of Payment" document,[4] which he believes is proof that he received an assignment. (ECF No. 13-5, Ex. C.) In it, Patient agreed:

> [to] hereby assign, transfer, and set over to Winthrop-University Hospital and its related health care providers and entities, all monies and/or benefits to which I may be entitled from government agencies, including the Medicare and Medicare Programs, insurance carriers, HMOs, or others who are financially liable for my (the patient's) hospitalization and medical care to cover the costs of the care and treatment rendered.

(Id. at 2.)

Plaintiff also argues that he has additional proof of an assignment. He submits a "Health Insurance Claim Form" given to Defendant on which a box was checked "yes" in response to the question "Accept Assignment?" (Pl.'s Opp. at 8; ECF No. 13-4, Ex. B, at 2.)

As explained in further detail below, both of these alleged assignments are invalid because the terms of the Plan prohibit Patient from unilaterally assigning her rights without Defendant's permission.[5]

For healthcare providers to have standing, they must show that there is "a valid assignment that comports with the terms of the benefits plan." Mbody Minimally Invasive Surgery P.C. v. Empire Healthchoice HMO, Inc., No. 13-CV-6551, 2016 WL 2939164, at *4 (S.D.N.Y. May 19, 2016). Although "[t]he Second Circuit has not yet spoken on the effect of assignments made in

---

[4] Because this document is integral to Plaintiff's claims and he relies upon it in framing his pleadings, it may be considered in resolving the instant motion. See Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016); Hishmeh v. Empire Healthchoice HMO, Inc., No. 16-CV-2780, 2017 WL 663543, at *2 (E.D.N.Y. Feb. 17, 2017).

[5] Defendant also raises other arguments in asserting that these two documents at issue do not constitute a valid assignment to Plaintiff. It is unnecessary to address these arguments because the terms of the Plan prohibit Patient from unilaterally assigning her rights without Defendant's permission.

5

violation of anti-assignment provisions in ERISA plans," other circuit courts of appeals and "[d]istrict courts in this Circuit . . . have found that 'where plan language unambiguously prohibits assignment, an attempted assignment will be ineffectual . . . [and] . . . a healthcare provider who has attempted to obtain an assignment in contravention of a plan's terms is not entitled to recover under ERISA.'" Merrick, 175 F. Supp. 3d at 118–19 (quoting Neuroaxis Neurosurgical Assocs., PC v. Costco Wholesale Co., 919 F. Supp. 2d 345, 351–52 (S.D.N.Y. 2013)).

Here, Patient's Plan contains an unequivocal anti-assignment provision that bars any assignment without Defendant's consent.[6] It provides: "The coverage and any benefits under the Plan are not assignable by any Member without the written consent of the Plan." (ECF No. 12-3, Ex. A, at 67.) Plaintiff has not alleged that Defendant provided written consent to the assignment. Instead, he argues that "[p]ublic [p]olicy alone, and a clear, although absent here, concern for their insured, warrants acceptance of the assignment." (Pl.'s Opp. at 8.) Plaintiff has failed to demonstrate how public policy concerns override enforcement of this clear and unambiguous provision. Patient's acceptance of an assignment when the Plan contained an anti-assignment provision makes any purported assignment "ineffective-a legal nullity." McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc., 857 F.3d 141, 147 (2d Cir. 2017). Patient's Plan "expressly bar[s] the assignment of benefits upon which [Plaintiff] relies to establish his statutory standing, which is an essential element of a viable claim under ERISA." Hishmeh, 2017 WL 663543, at *4. Accordingly, Plaintiff's complaint must be dismissed because he lacks standing.

---

[6] Though "the Plan was not attached as an exhibit to the complaint, it is integral to the complaint and is incorporated by reference—indeed, it is repeatedly referenced in the complaint and forms the very basis for plaintiffs' claims. It is therefore properly considered by the Court on deciding the instant motion to dismiss." Prof'l Orthopaedic Assocs., PA v. 1199 Nat'l Benefit Fund, No. 16-CV-4838, 2016 WL 6900686, at *1 (S.D.N.Y. Nov. 22, 2016), aff.d sub nom. 697 F. App'x 39 (2d Cir. 2017).

6

### 3. Waiver

Despite the Plan's clear anti-assignment language, Plaintiff argues that Defendant waived enforcement of the anti-assignment provision by processing documents he submitted and issuing him a partial payment. While "the Second Circuit has not yet addressed whether a healthcare company may be estopped from relying on or waive its right to enforce an anti-assignment provision, it has found the equitable doctrines of estoppel and waiver are applicable to ERISA actions." Merrick, 175 F. Supp. 3d at 110. For the doctrine of waiver to apply, there must be "a clear manifestation of an intent . . . to relinquish [a] known right and mere silence, oversight or thoughtlessness in failing to object to a breach of the contract will not support a finding of waiver." Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc., 448 F.3d 573, 585 (2d Cir. 2006). Courts routinely find that when a health insurance company makes a direct payment to healthcare providers, it does not constitute a waiver of any applicable anti-assignment provision. See, e.g., Merrick, 175 F. Supp. 3d at 122 ("To find that United implicitly waived the anti-assignment provision by acting pursuant to the direct payment provision is to create an ambiguity where none exists"); Mbody, 2014 WL 4058321, at *3 ("That defendants did not raise the anti-assignment provision at the time they denied or reduced payment is irrelevant because the anti-assignment provision was not a factor [in] determining the payment amount. Plaintiffs' argument is simply another way of re-arguing that defendants waived the anti-assignment provision by making direct payments to plaintiffs—an argument courts have repeatedly rejected."). Here, the language in Defendant's Plan permits Defendant to "make payments directly to Providers for Covered Services." (ECF No. 12-3, Ex. A, at 66.) Thus, Defendant was "explicitly permitted to pay Plaintiff directly under the Plan" without waiving the anti-assignment provision. Merrick, 175 F. Supp. 3d at 122. Accordingly, Defendant did not waive enforcement of the anti-assignment provision when it processed Plaintiff's submissions and issued him a partial payment.

Plaintiff's argument that Patient waived the anti-assignment provision is similarly unpersuasive. As explained earlier, Patient lacks the authority to waive enforcement because she cannot act unilaterally and must have "the written consent of the Plan" to agree to an assignment. (ECF No. 12-3, Ex. A, at 67.) Further, the Plan expressly provides that only Patient's employer, not Patient, has the authority to waive the Plan's provisions. It states: "No agent or other person, except an authorized officer of the Employer, has authority to waive any conditions or restrictions of the Plan." (Id. at 83.) Plaintiff's claim that Patient waived enforcement of the anti-assignment provision is therefore meritless.

Patient's Plan expressly bars the assignment upon which Plaintiff relies to establish standing, and Plaintiff has failed to demonstrate why the Plan's anti-assignment provision is unenforceable. Accordingly, Defendant's motion to dismiss is GRANTED because Plaintiff lacks standing to bring this lawsuit. In addition, the Court finds that Plaintiff's request to amend his complaint would be futile because there is no set of facts Plaintiff could allege that would confer standing in the face of the Plan's clear and unambiguous anti-assignment provision.

### III. CONCLUSION

Based on the foregoing, Defendant's motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.

**SO ORDERED.**

Dated: August 3, 2020
      Central Islip, New York

                                                /s/ (JMA)
                                                JOAN M. AZRACK
                                                UNITED STATES DISTRICT JUDGE